IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ERNEST TILLEY,

                    Plaintiff,

v.                                          CIVIL ACTION NO.  2:25-cv-00259

DEPUTY PIERSON, et al.,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendants Joseph Milam and West Virginia State Police's ("WVSP") Motion to Dismiss, [ECF No. 9]; Defendants Deputy Pierson and Deputy Fox's[1] Motion to Dismiss, [ECF No. 11]; and Defendant Fayette County Commission's ("FCC") Motion to Dismiss, [ECF No. 26]. Plaintiff Ernest Tilley timely responded to each motion, [ECF Nos. 14, 15, 28], to which each Defendant timely replied, [ECF Nos. 16, 17, 30]. The matters are ripe for review.

I.      **BACKGROUND**

Plaintiff alleges that on March 23, 2023, he was arrested, beaten, and injured by officers from the WVSP and the Fayette County Sheriff's Department. [ECF No. 1, ¶ 13]. At the time of the alleged incident, Plaintiff was battling pneumonia and had elevated white blood cell counts from the infection. *Id.* ¶ 14. Plaintiff had also been working excessive hours as a cook at an "I-HOP Restaurant," which contributed to his deteriorating medical condition. *Id.* ¶¶ 15–16.

---

[1] Defendants Deputy Pierson and Deputy Fox are referred to solely by their last names, "Deputy Pierson" and "Deputy Fox," throughout the Complaint and the parties' briefing. Accordingly, I will refer to them in the same manner.

According to the Complaint, due to his illness and dehydration, Plaintiff wandered outside his home in his underwear and was not fully aware of his surroundings. *Id.* ¶¶ 17–18. Plaintiff's unusual behavior prompted a call to law enforcement. *Id.* ¶ 19. When officers arrived, they began cursing at Plaintiff and deployed a taser on him approximately four times. *Id.* ¶ 20. The officers then threw Plaintiff to the ground, choked him while he was handcuffed, and subjected him to a continuous beating lasting approximately twenty-six minutes. *Id.* ¶¶ 22–23. While being loaded onto a stretcher, officers continued to beat Plaintiff, and, unable to defend himself, he lost consciousness. *Id.* ¶¶ 24–26. Plaintiff alleges his fiancée captured the entire incident on video. *Id.* ¶ 32.

As a result of the alleged conduct, Plaintiff avers he suffered a broken shoulder that required surgery and was hospitalized for three days. *Id.* ¶¶ 27–29. He further alleges that he sustained additional injuries and continues to experience ongoing complications, including the potential need for a full shoulder replacement. *Id.* ¶¶ 30–31. Plaintiff asserts that he has incurred over $50,000 in medical expenses and lost his employment because of the incident. *Id.* ¶¶ 33–34.

Plaintiff instituted this action on April 18, 2025, against (1) Fayette County Sheriff's Department deputies Pierson, Fox, and John and Jane Does (the "Fayette County John and Jane Does") in their individual and official capacities, (2) the FCC, (3) WVSP Trooper Joseph L. Milam in his official capacity, (4) John and Jane Does in the State Police (the "West Virginia John and Jane Does"), and (5) the WVSP. *Id.* ¶¶ 7–12. Count One alleges excessive force in violation of the Fourth Amendment against Deputies Pierson and Fox, the FCC, Trooper Milam, and the WVSP. *Id.* ¶¶ 35–45. Count Two alleges false arrest in violation of the Fourth Amendment and state law against Deputies Pierson and Fox, the Fayette County John and Jane Does, Trooper Milam, and the West Virginia John and Jane Does. *Id.* ¶¶ 46–52. Count Three alleges malicious prosecution

2

in violation of the Fourth and Fourteenth Amendments and state law against Deputies Pierson and Fox, the Fayette County John and Jane Does, Trooper Milam, and the West Virginia John and Jane Does. *Id.* ¶¶ 53–57. Count Four alleges a "Failure to Train and Supervise Officers [and/or] Patrolmen under State Law" against the FCC and the WVSP. *Id.* ¶¶ 58–62. Count Five alleges an "Unconstitutional Policy of Arresting for Obstructing an Officer" against the FCC and the WVSP. *Id.* ¶¶ 63–69. Count Six alleges a "Failure to Train and Supervise Officers [and/or] Patrolmen" against the FCC and the WVSP. *Id.* ¶¶ 70–73.[2] Count Seven alleges assault and battery against Deputy Pierson, Deputy Fox, and Trooper Milam. *Id.* ¶¶ 74–78. Count Eight alleges "Extreme and Outrageous Conduct; Emotional Distress" against all Defendants. *Id.* ¶¶ 79–85.

Plaintiff seeks a range of remedies, including compensatory damages, "damages against all Defendants on the theory of vicarious and strict liability," prejudgment and post-judgment interest as provided by law, attorney's fees and costs, and "[s]uch further recovery and relief as this court may deem just and equitable." *Id.* at 12. "With respect to the West Virginia State Agency defendants, the Plaintiff[] only seek[s] recovery up to the limits of applicable insurance policies and possibly beyond." *Id.*

Although Plaintiff provided the FCC, the WVSP, and the West Virginia Attorney General's Office with an "Official Notice of Claim with Notice to the Attorney General" on March 20, 2025, he did not file the instant Complaint until April 18, 2025. [ECF No. 1; ECF No. 14, Ex. A].

---

[2] Although both Count Four and Count Six are styled as "Failure to Train and Supervise" claims, the substantive paragraphs following each heading do not make clear how Plaintiff intended these counts to differ. Because the title of Count Four specifically references that it is brought "under state law," I construe Count Four as asserting a state-law negligent training and supervision claim against the FCC and the WVSP and Count Six as asserting a separate § 1983 claim. *See Lane v. Fayette County Commission*, No. 2:18-cv-01223, 2019 WL 4780815, at *5 (Copenhaver, J.) (recognizing the difference between a state law claim for negligent training and supervision and municipality liability under § 1983).

Defendants now move to dismiss all claims for several reasons. First, Defendants argue that Plaintiff's claims are barred by the applicable two-year statute of limitations. [ECF No. 10, at 4–6; ECF No. 12, at 3–6; ECF No. 27, at 3–5]. WVSP further argues that it is not a suable entity separate from the State and that sovereign immunity bars any suit against the State. [ECF No. 10, at 6–7]. Trooper Milam also contends that state officials sued in their official capacities are not "persons" subject to suit under 42 U.S.C. § 1983, and therefore any claims against him in his official capacity should be dismissed. *Id.* at 7–8. Additionally, Defendants argue that Plaintiff's malicious prosecution claim (Count Three) fails as a matter of law. *Id.* at 8. Finally, the FCC asserts that Counts Four and Six, alleging failure to train or supervise, should be dismissed because they lack factual support demonstrating that Plaintiff's injuries were proximately caused by a policy or custom of the FCC. [ECF No. 27, at 7–9].

## II.    LEGAL STANDARD

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). In resolving a motion to dismiss under Rule 12, the court may not consider "matters outside the pleadings," Fed. R. Civ. P. 12(d). Specifically, the court considers only those "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

Generally, a pleading under the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). "When ruling on a motion to dismiss, courts must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Farnsworth v. Loved Ones in Home Care, LLC*, No. 2:18-CV-01334, 2019 WL 956806, at *1 (S.D. W. Va.

Feb. 27, 2019) (citing *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440). These factual allegations, taken as true, must "state a claim to relief that is plausible on its face." *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 288 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility standard is not a probability requirement, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although "the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). Thus, "a complaint is to be construed liberally so as to do substantial justice." *Id.*

## III.    DISCUSSION

At the outset, I conclude Plaintiff's 42 U.S.C. § 1983 claims against the WVSP and Trooper Milam in his official capacity fail as a matter of law. A state and its agencies are not "person[s]" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–71 (1989) (holding states and state agencies are immune from § 1983 suits in federal court); *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("[A] State and its 'arms' are, in effect, immune from suit in federal court . . . ."). The same immunity applies to state officials sued in their official capacity for monetary damages, as such suits are treated as actions against the State itself. *Will*, 491 U.S. at 71. Moreover, there is no respondeat superior liability for state agencies based on claims against its officers under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

To the extent Plaintiff now argues that he "sues the Trooper individually in Counts One, Two, [and] Three," I find such an argument unpersuasive. [ECF No. 14, at 6]. The Complaint's caption identifies Trooper Milam *solely* in his official capacity. Nowhere in the body of the

Complaint does Plaintiff specify that Trooper Milam is being sued in his individual capacity. In *Biggs v. Meadows*, 66 F.3d 56, 60 (4th Cir. 1995), the Fourth Circuit held "that a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." The *Biggs* rule, however, does not apply here. By the rule's own terms, it applies only "when a plaintiff does not allege capacity specifically." *Id.* at 61. And here, Plaintiff specifically identifies the capacities of each Defendant. The caption makes clear, for example, that Deputies Pierson and Fox are sued in *both* their individual and official capacities—underscoring that the omission of any individual-capacity allegation as to Trooper Milam reflects Plaintiff's pleading choice and therefore controls.

Accordingly, to the extent Counts One, Two, Three, Five, and Six assert § 1983 claims against the WVSP and Trooper Milam in his official capacity, they are **DISMISSED**.[3]

### A. Federal Law Claims

The parties disagree as to whether Plaintiff's federal claims under § 1983 are timely. Defendants argue that Plaintiff's federal law claims are barred by the applicable two-year statute of limitations. [ECF No. 10, at 4–6; ECF No. 12, at 3–6; ECF No. 27, at 3–5]. Plaintiff contends that the limitations period was tolled under West Virginia law. [ECF No. 14, at 4–5; ECF No. 15, at 4–6; ECF No. 28, at 4–6].

---

[3] Of course, a state official sued in his or her official capacity for injunctive relief would be a suable "person" under § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). Here, however, Plaintiff seeks only retrospective monetary relief. The Complaint contains nothing more than a stray reference to injunctive relief in a jurisdictional boilerplate citation to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2202, neither of which independently creates or substitutes for a properly pleaded request for prospective relief. Nor does the Complaint identify any ongoing violation of federal law that could conceivably support an *Ex parte Young* action. Because Plaintiff has failed to plead any forward-looking relief whatsoever, the *Ex parte Young* exception does not apply.

The statute of limitations for claims brought pursuant to § 1983 is governed by the length of time the forum state allows for personal injury claims. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). Federal law, however, governs when the limitation period begins to accrue. *Id.*; *see also McDonough v. Smith*, 588 U.S. 109, 115 (2019) ("[T]he time at which a § 1983 claim accrues is a question of federal law, conforming in general to common-law tort principles." (internal quotation marks omitted)); *Wallace v. Kato* 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law."); *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 388 (4th Cir. 2014); *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011).

With respect to all of Plaintiff's § 1983 claims, the applicable limitations period in West Virginia is two years under the state's "general or residual statute for personal injury actions," W. Va. Code § 55-2-12(b).[4] *See Smith v. Travelpiece*, 31 F.4th 878, 883 (4th Cir. 2022); *see also Okure*, 488 U.S. at 249–50 (1989) ("We accordingly hold that where state law provides multiple

---

[4] Although the Supreme Court of Appeals of West Virginia and federal district courts have applied the one-year limitations period found in W. Va. Code § 55-2-12(c) to false arrest and malicious prosecution claims, the Supreme Court of the United States has made clear that all § 1983 claims are governed by the state's general or residual personal injury limitations period. *See Wilson v. Garcia*, 471 U.S. 261, 276–80 (1985) (holding that § 1983 claims are properly characterized as personal injury actions), *abrogated in part on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004); *Okure*, 488 U.S. at 249–50 (holding that, where a state has multiple personal injury statutes, courts must apply the residual personal injury limitations period); *see also Wilt v. State Auto. Mut. Ins. Co.*, 203 W. Va. 165, 170–71, 506 S.E.2d 608, 613–14 (1998) ("Numerous torts such as libel, defamation, false arrest, false imprisonment, and malicious prosecution take the one-year statute of limitations set forth in West Virginia Code § 55-2-12(c)."); *but see Rodgers v. Corp. of Harpers Ferry*, 179 W. Va. 637, 640–41, 371 S.E.2d 358, 361–62 (1988) ("[W]e hold that all claims filed in West Virginia pursuant to 42 U.S.C. § 1983 are personal injury actions governed by the two-year statute of limitations set forth in W. Va. Code § 55-2-12(b) (1981)."), *abrogated in part on other grounds by Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993).
    Consistent with that precedent, § 1983 claims filed in West Virginia are subject to the two-year limitations period set forth in W. Va. Code § 55-2-12(b). *Travelpiece*, 31 F.4th at 883; *Patton v. Cnty. of Berkeley*, 242 W. Va. 315, 317 n.3, 835 S.E.2d 559, 562 n.3 (2019) ("[C]ivil rights claims filed in state court pursuant to 42 U.S.C.A. § 1983 are personal injury actions governed by state two-year statute of limitations, rather than one-year statute of limitations."). Accordingly, Plaintiff's § 1983 false arrest and malicious prosecution claims are governed by a two-year statute of limitations.

statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.").

As noted, Plaintiff brings five causes of action pursuant to § 1983. First, Plaintiff asserts three Fourth Amendment-based claims: Excessive Force (Count One), False Arrest (Count Two), and Malicious Prosecution (Count Three). [ECF No. 1, ¶¶ 35–57]. Second, Plaintiff asserts a *Monell* claim (Count Five) for an "Unconstitutional Policy of Arresting for Obstructing an Officer" against the FCC. *Id.* ¶¶ 63–69. Lastly, Plaintiff asserts a *Monell* supervisory liability claim (Count Six) against the FCC for "Failure to Train and Supervise." *Id.* ¶¶ 58–62. I address each claim below.

### 1.    Count One – Excessive Force

Although state law determines the applicable statute of limitations for § 1983 claims, federal law governs the date on which that limitations period begins to run. *Wallace*, 549 U.S. at 388. Federal law, in turn, "conform[s] . . . to common-law tort principles" to determine this date. *Id.*; *see also Travelpiece*, 31 F.4th at 883 ("But general common-law principles, without reference to West Virginia's law, determine when the claim accrues and when the statute of limitations begins to run.").

"Under [general] common-law principles, 'it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'" *Travelpiece*, 31 F.4th at 883 (quoting *Wallace*, 549 U.S. at 388); *see also Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d at 389 ("For most common-law torts, a plaintiff's cause of action accrues, and the limitations period commences, when the plaintiff knows or has reason to know of his injury . . . ."). But the standard rule "does not always control the start of the limitations period for a § 1983 claim." *Travelpiece*, 31 F.4th at 883 (quoting *Owens v. Baltimore*

8

*City State Attorneys Office*, 767 F.3d at 389). Where the common law provides a "distinctive rule" for when a particular tort's limitations period begins, that rule guides the accrual of the analogous § 1983 claim. *Id.*

To determine whether there is a distinctive accrual rule for a § 1983 claim, courts look to the common law to identify the tort most analogous to the "precise constitutional violation." *Id.* at 883–84. "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Travelpiece*, 31 F.4th at 886–87 (finding that the closest common law tort analogy to a search and seizure claim is trespass and that such claim accrues at "the time it was committed, and not from the time when the full extent of the injury was ascertained.").

Applying these principles, the Fourth Circuit has held that "a § 1983 claim based on an unconstitutional search and seizure of property runs from the time of the search and seizure." *Travelpiece*, 31 F.4th at 887 (citing *Cramer v. Crutchfield*, 648 F.2d 943, 945 (4th Cir. 1981)). The same reasoning applies where the seizure is effected against the person rather than property: the injury and its cause are immediately known. *Torres v. Madrid*, 592 U.S. 306, 311 (2021) (excessive force claims concern the "seizure" of a "person"); Thomas M. Cooley, *A Treatise on the Law of Torts or the Wrongs Which Arise Independent of Contract* 62–68 (1880) (treating trespass as the proper vehicle for direct, wrongful applications of force). [5]

---

[5] *See also* Laurent Sacharoff, Torres *and the Limits of Originalism*, 19 Ohio St. J. Crim. L. 201, 212 (2021) ("Even after the state and federal constitutional provisions came into effect in America, individuals would not sue under those provisions. They would not sue for a violation of their Fourth Amendment rights. Instead, they would sue for battery, assault, and false imprisonment." (citing *Butler v. Washburn*, 25 N.H. 251, 251 (1852); and then citing *Searls v. Viets*, N.Y. Sup. Ct. 224 (N.Y. App. Div. 1873)); *Dickenson v. Watson*, Jones, T. 205, 205–06, 84 Eng. Rep. 1218, 1218–19 (K. B. 1682) (in suit for "assault, battery, and wounding," the court found that "in *trespass* the Defendant shall not be excused without unavoidable necessity" (emphasis added)).

Accordingly, for purposes of determining the accrual of the statute of limitations for a § 1983 claim for excessive force, such a claim accrues at the time the alleged excessive force occurs as the injury and its cause are immediately apparent. *See Travelpiece*, 31 F.4th at 887 (concluding that claims under the Fourth Amendment accrue "when they are violated"); *see also* 4 Restatement (Second) of Torts § 899, Comment c (1977) ("A battery is complete upon physical contact, even though there is no observable damage at the point of contact."); *Seabolt v. Saltsgaver*, No. 2:14-cv-28018, 2016 WL 675702, at *4–5 (S.D. W. Va. Jan. 4, 2016) (finding that the plaintiff's excessive force claim accrued on the date that the alleged excessive force was applied by the defendant).

Here, the alleged excessive force occurred on March 23, 2023. [ECF No. 1, ¶ 13; ECF No. 14, at 4]. On that date, Plaintiff knew or had reason to know of his injuries and their connection to the conduct of the Defendants. Nothing in the Complaint suggests any factual basis for delaying accrual of Plaintiff's excessive force claim beyond March 23, 2023, and Plaintiff offers no argument to the contrary.

Instead, Plaintiff contends that the limitations period was tolled under West Virginia's pre-suit notice statute, W. Va. Code § 55-17-3. [ECF No. 14, at 4–5; ECF No. 15, at 4–6; ECF No. 28, at 4–6]. That statute requires that "at least 30 days prior to the institution of an action against a governmental agency, the complaining party or parties shall provide the chief officer of the governmental agency and the Attorney General written notice . . . of the alleged claim and the relief desired." W. Va. Code § 55–17–3(a)(1). "If the written notice is provided . . . any applicable statute of limitations is tolled for 30 days . . . ." *Id.* § 55–17–3(a)(2).

Relying on these provisions, Plaintiff asserts that the timely mailing of his Notice of Claim to the FCC, the WVSP, and the Attorney General tolled the statute of limitations for thirty days,

rendering his complaint timely filed. [ECF No. 14, at 4–5; ECF No. 15, at 5–6]. Plaintiff further argues that strict compliance with the statute presents a procedural dilemma when both state and non-state defendants are named. [ECF No. 15, at 5–6]. Filing immediately to preserve claims against the FCC and other county defendants would violate the pre-suit notice requirement applicable to the WVSP, while waiting for the thirty-day tolling period to expire could render the claims against the FCC untimely. *Id.* Accordingly, Plaintiff maintains that his compliance with W. Va. Code § 55-17-3 properly tolled the limitations period and preserved all claims asserted in this action.

Plaintiff's argument fails for one straightforward reason: West Virginia's notice statute does not apply to actions filed in federal court. Section 55–17–2 expressly defines an "action" under the statute as "a proceeding instituted against a governmental agency in *a circuit court or in the supreme court of appeals* . . . ." W. Va. Code § 55–17–2 (emphasis added). Because the instant action was filed in federal court, the state law requiring notice is inapplicable. *D.W. v. Walker*, No. 2:09-cv-00060, 2009 WL 1393818, at *3 (S.D. W. Va. May 15, 2009) (Goodwin, J.); *see also Durstein v. Alexander*, No. 3:19-cv-0029, 2019 WL 6833858, at *6 (S.D. W. Va. Dec. 13, 2019) (Chambers, J.) ("West Virginia's notice-of-claim law does not apply to suits filed in federal court."); *Smith v. Allred*, No. 2:15-cv-06026, 2016 WL 3094008, at *7 (S.D. W. Va. June 1, 2016) (Copenhaver, J.) ("Because the statute limits the pre-suit notice requirement, as well as the related tolling provision, to suits 'instituted . . . in a circuit court or in the supreme court of appeals,' it has no application to suits filed in federal court." (quoting W. Va. Code § 55–17–3)).

Consequently, the limitations period for Plaintiff's excessive force claim expired March 23, 2025. Plaintiff did not file this action until April 18, 2025. [ECF No. 1]. Accordingly, Count One is time-barred and **DISMISSED WITH PREJUDICE** as to all Defendants.[6]

        2.        Count Two – False Arrest

"[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." *Wallace*, 549 U.S. at 397. Put another way, the limitations period does not commence upon arrest but rather "when legal process was initiated against" the plaintiff. *Id.* at 390 ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.").

Plaintiff alleges he was arrested on March 23, 2023. [ECF No. 1, ¶ 13]. He pleads no facts regarding any criminal proceedings stemming from his arrest. However, in his response to Trooper Milam and the WVSP's motion, Plaintiff attaches state magistrate court records showing that a criminal complaint[7] charging him with obstructing an officer and battery on officers was filed and

---

[6] Even if this were a covered "action" under W. Va. Code § 55–17–3, that provision applies only to actions against a "governmental agency." The statute defines "government agency" as "a constitutional officer or other public official named as a defendant or respondent in his or her official capacity, or a department, division, board, commission or other agency or instrumentality *within the executive branch of state government* that has the capacity to sue or be sued[.]" W. Va. Code § 55–17–2(2) (emphasis added). "County commissions, city governments or the individuals employed by those entities are not considered to be within the 'executive branch of state government.'" *Braxton v. Joyner*, No. 5:04-cv-0894, 2005 WL 2249865, at *3 (S.D. W. Va. Sept. 15, 2005) (Chambers, J.); *see also Patton v. Cnty. of Berkeley*, 242 W. Va. 315, 321–22, 835 S.E.2d 559, 565–66 (2019) (finding *Braxton* persuasive in holding "county sheriff's departments and the law enforcement officials they employ are not within the executive branch of state government for purposes of the tolling provisions of West Virginia Code § 55-17-3(a)(2)."). Accordingly, W. Va. Code § 55-17-3 does not apply to Plaintiff's claims against the FCC, Deputies Pierson and Fox in their official capacities, or the Fayette County John and Jane Does. And even if it did, the claims against Deputies Pierson and Fox in their *individual capacities* would remain time-barred.

[7] Rule 5 of the West Virginia Rules of Criminal Procedure for Magistrate Courts requires that, where an arrest is made without a warrant, a complaint establishing probable cause must be promptly filed. "If from the facts stated in the complaint the magistrate finds probable cause, the complaint becomes the charging instrument initiating a criminal proceeding." W. Va. Mag. Ct. Crim. R. 3.

signed by the magistrate on March 23, 2023. [ECF No. 14, Ex. B]. The records further reflect that Plaintiff's initial appearance and bail hearing occurred on March 31, 2023. *Id.* Plaintiff asks the Court to take judicial notice of those records. *Id.* at 7.

Ordinarily, matters outside the pleadings are not considered at the Rule 12(b)(6) stage. However, a court may, in narrow circumstances, consider documents subject to judicial notice without converting the motion to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015). Courts may properly take judicial notice of matters of public record, including state court criminal proceedings. *Goldfarb*, 791 F.3d at 508; *see also Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011) (taking judicial notice of plaintiff-appellee's conviction in state court).

The parties do not dispute that the magistrate court orders are matters of public record. Accordingly, I take notice that, following Plaintiff's arrest on March 23, 2023, his initial appearance in magistrate court occurred on March 31, 2023, at which time he was advised of the charges against him, the potential consequences of a guilty finding or plea, and his right to counsel. That same day, the magistrate authorized Plaintiff's continued detention until bail was posted. Accordingly, the statute of limitations on Plaintiff's false arrest claim began to run on March 31, 2023—the date the court initiated legal process and authorized Plaintiff's continued custody. Plaintiff did not file the Complaint in this matter until April 18, 2025, after the two-year limitations period had expired. Therefore, Plaintiff's § 1983 false arrest claim is time-barred and is **DISMISSED WITH PREJUDICE** as to all Defendants.

3.      Count Three – Malicious Prosecution

A § 1983 claim "for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 489 (1994); *McDonough*, 588 U.S. at 116. Here, the Complaint does not allege any facts concerning the disposition of any underlying criminal charges. However, Plaintiff's state magistrate court records show that he pled guilty to the obstruction charge in exchange for the dismissal of the related battery charge pursuant to a plea agreement. [ECF No. 14, Ex. B]. The magistrate court entered the corresponding criminal judgment orders on September 13, 2023. *Id.* Considering that date as the point of termination for the purposes of Plaintiff's malicious prosecution claim, I find the claim is timely.

Nevertheless, to state a federal claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans v. Chalmers*, 703 F.3d 636, 647 (2012). Although timely, I find the favorable-termination element cannot be met. A dismissal of related charges as part of a plea agreement does not constitute a favorable termination because the criminal prosecution did not end without a conviction. *Thompson v. Clark*, 596 U.S. 36, 39 (2022) (holding that a plaintiff alleging a Fourth Amendment malicious prosecution claim under § 1983 "need only show that his prosecution ended without a conviction," not an affirmative indication of innocence).

Because Plaintiff has not alleged—and the judicially noticeable public record confirms that he cannot allege—a favorable termination, his federal malicious prosecution claim must be dismissed. As amendment would be futile, to the extent Count Three asserts a claim for malicious prosecution under § 1983, it is **DISMISSED WITH PREJUDICE** as to all Defendants.

4.    Counts Five and Six – *Monell* Liability

Counts Five and Six assert *Monell* claims against the FCC based on a failure to train and supervise and an allegedly unconstitutional policy of arresting individuals for obstruction without probable cause. Plaintiff has not cited, nor have I found, any controlling legal authority supporting a separation of the accrual of a *Monell* claim from its predicate constitutional violation.[8]

Nevertheless, I need not resolve the timeliness of Plaintiff's *Monell* claims at this juncture because, even if timely, Plaintiff has not plausibly alleged a *Monell* claim. Under *Monell*, a municipality may be liable under § 1983 only when its "policy or custom" causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipal policy or custom may be established

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [or supervise] officers that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

---

[8] As a district court in the Southern District of Ohio observed: "The question of when a *Monell* claim accrues turns out to be a thornier issue than one might imagine." *Boyer v. Clinton Cnty. Sheriff's Off.*, 645 F. Supp. 3d 815, 823 (S.D. Ohio Dec. 9, 2022). "[C]ourts have divided into two camps. In the first, courts hold that a *Monell* claim accrues when the underlying conduct giving rise to potential *Monell* liability occurred." *Id.* (collecting cases). "In the second camp, courts follow what they often call a 'delayed accrual' theory. Under this theory, a *Monell* claim does not accrue until a plaintiff is at least on inquiry notice that the conduct the plaintiff experienced is part of some pattern or practice sufficient to give rise to *Monell* liability." *Id.* (collecting cases).

    The Fourth Circuit has yet to address this issue head-on. It has previously applied the "discovery rule" of accrual to § 1983 claims, holding that a plaintiff's cause of action does not accrue until the "plaintiff knows or has reason to know of the injury." *Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975); *see also Simon v. Gladstone*, No. 23-1431, 2025 WL 721317, at *5 (4th Cir. Mar. 6, 2025) (describing the discovery rule as "[o]nce a plaintiff obtains knowledge 'that he has been hurt and who inflicted the injury . . . the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of [the offense] that are reasonably discoverable.'" (quoting *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc)); *but see Travelpiece*, 31 F.4th at 883 n.4 (contrasting the discovery rule of accrual applied in earlier § 1983 cases with the Supreme Court's instruction that § 1983 accrual must reflect common-law principles well settled in 1871, and noting historical sources suggesting that a discovery rule may not have been established at that time). In light of the unsettled guidance on when a *Monell* claim accrues, I cannot find that "the time bar is apparent on the face of the complaint." *Ott v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

*Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 493 (4th Cir. 2025) (internal quotation marks omitted); *see also Connick v. Thompson*, 563 U.S. 51, 60–61 (2011); *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). Municipal liability, however, may not be premised on a theory of respondeat superior. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). "[A] municipality is liable only for its *own* illegal acts." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379 at 402; *see also Connick*, 563 U.S. at 60–61.

Count Six alleges a failure to train and supervise. A failure-to-train claim will trigger municipal liability only where "the failure to train amounts to deliberate indifference to the rights of persons with whom [municipal employees] come into contact." *Harris*, 489 U.S. at 388. "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (2011) (cleaned up) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."). Deliberate indifference for may be shown in two ways. First, a plaintiff may point to "a pattern of similar constitutional violations" by employees to demonstrate deliberate indifference on the part of policymakers. *Id.* at 62. Second, a municipality may be liable for a single, isolated incident where the need for training with respect to an officer's conduct was "plainly obvious." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000) (citing *Harris*, 489 U.S. at 390 n.10) (finding that if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need")).

A plaintiff must also plead causation. Simply establishing "that a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality]." *Harris*, 489

U.S. at 390. There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.* at 385; *see also Monell*, 436 U.S. at 694 (a municipal policy must be the "moving force [behind] the constitutional violation").

Here, Plaintiff failed to plausibly allege "a pattern of similar constitutional violations" or that the need for further training was "plainly obvious." Plaintiff alleges only, "Due to the large number of illegal and improper incidents[,] . . . it is clear that the FCC has not properly trained these two deputies." [ECF No. 1, ¶¶ 60, 70]. The Complaint makes no mention of the type or scope of training the deputies received, identifies no prior incidents, and provides no facts describing any alleged deficiencies in the deputies' training. There are also no facts from which I could infer a direct connection between any purported failure to train and Plaintiff's arrest, prosecution, or the alleged use of force. I find Plaintiff's conclusory assertions do not satisfy federal pleading standards.

Plaintiff's failure-to-supervise claim fares no better. To state a failure-to-supervise claim under *Monell*, Plaintiff must plausibly allege (1) that policymakers had actual or constructive knowledge that their subordinates were engaged in conduct posing a pervasive and unreasonable risk of constitutional injury; (2) that their response evidenced deliberate indifference or tacit authorization; and (3) a causal link between the inaction and Plaintiff's alleged injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994)). A "pervasive and unreasonable risk" requires allegations of widespread conduct occurring on several occasions. *Id.* Again, Plaintiff identifies no prior similar incidents, no facts suggesting that FCC supervisors were aware of any pattern of wrongful arrests or excessive force, and no allegations tying any policymaker's decisions or inaction to his arrest, prosecution, or the alleged

use of force. In the absence of well-pled facts supporting each element, his failure-to-supervise claim does not cross the line from possible to plausible under *Twombly* and *Iqbal*.

Count Five's claim that the FCC maintains a policy of charging obstruction to cover excessive force is likewise unsupported by factual allegations from which such a policy or custom could be inferred. *See Brown*, 520 U.S. at 415. Plaintiff pleads only a single encounter—his own—and offers a speculative conclusion that officers "commonly" arrest individuals for obstruction without probable cause. [ECF No. 1, ¶¶ 65–69].  That kind of "[t]hreadbare recital[] of the elements" cannot establish deliberate indifference or the existence of any widespread practice. *Iqbal*, 556 U.S. at 678.

Accordingly, Counts Five and Six are **DISMISSED**.

### B.  State Law Claims

Having dismissed the federal claims that conferred original jurisdiction in this action, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims pursuant to 28 U.S.C. § 1367(c)(3). *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, the state-law claims are **DISMISSED** and subject to the tolling provisions set forth in 28 U.S.C. § 1367(d).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss, [**ECF Nos. 9, 11, 26**], are **GRANTED**.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:        November 17, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

18